HARRIET HIRSCH CRAMER *vs.* LEE HIRSCH. November 13, 1984. *Divorce and Separation,* Separation agreement, Child support. *Contract,* Separation agreement.

Prior to their divorce in 1968, the parties entered into a separation agreement which, by its terms, was not to be incorporated in the anticipated decree (such was the nomenclature at the time) of divorce. As such, the agreement survived the judgment and was subject to enforcement by an action at law. *Schillander* v. *Schillander,* 307 Mass. 96, 98 (1940). Compare *Fabrizio* v. *Fabrizio,* 316 Mass. 343, 346-347 (1944). That agreement required Lee Hirsch (the husband) to pay $222.22 per month for the support of each of the couple's three children, until the occurrence of several contingencies. For the purposes of this case, the operative contingency was the time, June, 1982, when the youngest child, Joseph Karl Hirsch, became self-supporting. The husband cut off support payments on account of Joseph in 1977, when Joseph was fifteen years old and in school. His reason for doing so (as found by the judge) was that Harriet Hirsch Cramer (the wife), who had remarried, had encouraged Joseph to use Cramer, rather than Hirsch, as his family name. In 1974 she had filed a petition on Joseph's behalf for a change of Joseph's name to Joseph Karl Cramer, and that petition had been denied. Nonetheless, Joseph registered in school and in other situations where registration was required under the last name of Cramer. When he attained age eighteen Joseph petitioned in his own right for a change of name to Cramer.

The wife brought an action founded on the contract. A Probate Court judge sitting by designation in Superior Court ruled that "it was implicit in the parties' separation agreement . . . that the children would continue to use the defendant's surname of Hirsch" and "that the plaintiff willfully [placed herself in breach of] her obligation with the defendant by using her married name of Cramer as their said son's surname. . . ." Accordingly, the judge determined that the wife was not entitled to recover under the contract, and judgment entered in favor of the husband.

We have examined the separation agreement, and it is barren of any language from which an obligation to have the children use their father's family name might be inferred. The only clause in the contract which treats the parties' children, other than the clauses spelling out the support payments, says simply: "The Wife shall have custody of the parties['] said minor children and the Husband shall have reasonable rights of visitation on and off the premises." We do not read in that sentence an imposition of an obligation upon the mother to assure that the children will use their father's family name. Here, the silence of the contract on the subject of retention by the parties' minor children of the father's name neither creates an ambiguity in an otherwise moderately detailed agreement, nor does it result in a failure to come to grips with an essential question. See *Bendetson* v. *Coolidge*, 7 Mass. App. Ct. 798, 802 (1979). Compare *Kesslen Shoe Co.* v. *Philadelphia Fire & Marine Ins. Co.*, 295 Mass. 123, 131 (1936); *Cooley* v. *Bettigole*, 1 Mass. App. Ct. 515, 520-521 (1973). No case has come to our attention which stands for the proposition that retention by a child of a father's name is an inherent understanding in a marital separation agreement. Express provisions proscribing use of a subsequent husband's name are not unknown in marital separation agreements. See 1 Lindey, Separation Agreements and Ante-Nuptial Contracts, Form 14.04 (1984 rev.). We are, therefore, unwilling to infer such an understanding when it has not been expressed and reject the husband's argument that the understanding is inherent in the nature of the contract.

Even if there were such an implicit understanding and consequent obligation on the part of the custodial spouse, the obligation of support of children stands on a special footing because it deals with the rights and needs of the children, rather than those of the custodial spouse. See *Knox* v. *Remick*, 371 Mass 433, 437 (1976); *Stansel* v. *Stansel*, 385 Mass. 510, 515 n.6 (1982). A failure, therefore, by a custodial spouse to perform such an obligation would not justify the nonperformance of the support covenants in the agreement. See also 1 Lindey, op. cit. § 15(19)(C), at 15-160, 15-165 – 15-166. Indeed, express provisions releasing a father from his child support obligations have been thought void as contrary to public policy. See 1 Lindey, op. cit. § 15, at 55 (1984 Supp.).

The judgment is reversed, and a new judgment is to be entered awarding to the wife the arrearage in support payments on Joseph's account from the time in 1977 when the husband ceased making those payments through June, 1982, together with statutory interest and costs.

*So ordered.*

*Bruce D. Clarkin* for the plaintiff.
*Samuel A. Marsella* for the defendant.